No. 28140

Tanya Figueroa, Joyce Garcia, Tony Joseph Alaniz, and Samuel Robert Rivas v. The Juvenile Court for the Second Judicial District in and for the City and County of Denver, State of Colorado, and Referee Rodgers and the Honorable Judge Lawritson, a duly elected, qualified and acting Juvenile Court Judge in and for the City and County of Denver and the Second Judicial District, State of Colorado

(595 P.2d 223)

Decided May 14, 1979.                    Rehearing denied June 11, 1979.

Jeffrey R. Edelman, for petitioners.

Max P. Zall, City Attorney, Carl R. Mangino, Assistant, Frank A. Elzi, Assistant for repondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the Opinion of the Court.

This original proceeding is addressed to four paternity actions. Subsequent to the filing of the original petition, Joyce Garcia, Tony Joseph Alaniz, and Samuel Robert Rivas, minors, were added as petitioners in this case. All of the petitioners are plaintiffs in separate actions to determine paternity. An answer was filed in response to our order to show cause which raises serious questions as to the standing of two of the parties. However, to expedite the final determination of this issue, we will assume that all parties have standing. We discharge the rule.

The minor petitioners appear in this proceeding by their guardian ad litem, who filed the complaints on their behalf in the court below. The central issue is whether a minor child in a paternity proceeding, who is indigent, is entitled to have blood grouping tests and genetic tests made at the expense of the Department of Social Services or the county. Complaints for the determination of the father and child relationship were filed on behalf of all of the minor children who are before us. Section 19-6-107, C.R.S. 1973 (1978 Repl. Vol. 8). All of the minor children are being supported by the program which provides aid for families with dependent children. Thus, indigency is not an issue.

The guardian ad litem seeks to have us extend our decision in *Franklin v. District Court,* 194 Colo. 189, 571 P.2d 1072 (1977) to the facts in this case. In *Franklin,* we granted an indigent putative father the right to obtain a blood grouping test at county expense. Here, the contention is made that the same reasoning requires that we extend the right to obtain a blood grouping test at county expense to the guardian ad litem who represents the minor child. In addition, the guardian ad litem seeks to obtain additional genetic tests which he asserts will provide a basis for diagnosing future problems that a minor child may encounter in later years. The Uniform Parentage Act, section 19-6-101, *et seq.,* C.R.S. 1973 (1978 Repl. Vol. 8), provides a basis for determining parentage. The same equal

protection arguments which dictated the result in the *Franklin* case are not before us in this case.

■   A broad spectrum of evidence is permitted to determine paternity. Section 19-6-113, C.R.S. 1973 (1978 Repl. Vol. 8), provides:

"*Evidence relating to paternity.* (1) Evidence relating to paternity may include:

"(a)   Evidence of sexual intercourse between the mother and alleged father at any possible time of conception;

"(b)   An expert's opinion concerning the statistical probability of the alleged father's paternity based upon the duration of the mother's pregnancy;

"(c)   Blood test results, weighted in accordance with evidence, if available, of the statistical probability of the alleged father's paternity;

"(d)   Medical or anthropological evidence relating to the alleged father's paternity of the child based on tests performed by experts. If a man has been identified as a possible father of the child, the court may, and upon request of a party shall, require the child, the mother, and the man to submit to appropriate tests; and

"(e)   All other evidence relevant to the issue of paternity of the child."

■   In all of the cases which are before us, the mother has asserted that a particular man is the father of the child and signed a verified complaint. No question exists as to the admissibility of blood grouping tests. In addition to the provisions of the Uniform Parentage Act, section 13-25-126, C.R.S. 1973, provides:

"*Blood tests to determine parentage.* (1) (a)   In any action, suit, or proceeding in which the parentage of any child is at issue, upon motion of the court or any of the interested parties, the court shall order the alleged mother, the child or children, and the alleged father to submit to one or more blood grouping tests. If any party refuses to submit to these tests, the court may resolve the question of parentage against such party to enforce its order if the rights of others and the interests of justice so require.

"(c)(1)   If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged parent is not the parent of the child, the question of parentage shall be resolved accordingly.

"(III)   If the experts conclude that the blood tests show the possibility of the alleged parent's parentage, admission of this evidence is within the discretion of the court, depending upon the infrequency of the blood type.

"(IV)   The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, show that the husband or wife is not the parent of the child."

However, blood grouping tests do not establish parentage with certainty and only provide a basis for excluding the possibility that a person is the

father of the child whose paternity is in issue. *See Blood Testing to Establish Paternity,* Department of Health, Education and Welfare (1977).

Our statutes provide no basis for obtaining the genetic testing which the guardian ad litem seeks, and if we were to grant the right to genetic testing, we would be invading the province of the General Assembly. Moreover, the blood grouping tests made available to the guardian ad litem for Tanya Figueroa did not exclude Marcy Paul Atencio, who the mother asserted was the father of the petitioning minor. In *Garcia v. Galvin,* Case No. P-19745, below, the putative father, who was indigent, obtained an order granting a blood grouping test at state expense. The remaining paternity cases before us are not at a stage where the issue posed in this original proceeding is properly postured for review.

Accordingly, the rule to show cause is discharged.